The opinion of the court was delivered by
DeBlanc, J.
The charge against defendant is that — on or about the -21st of December, 1873 — he killed and murdered one Joseph L. Cocke, in the parish of Jefferson. He was twice tried for this alleged crime, the first time on the 14th of January 1875, the second time on the 13th of April 1876. On each trial, the verdict against him was: “Guilty, without capital punishment.”
He was twice sentenced to imprisonment at hard labor for life. From the decree based on the first verdict, he appealed, and was granted •a new trial on the ground that some of the jurors by whom he had been indicted and tried were drawn from the Seventh District of the city of New Orleans, which had been taken from and had, then, ceased to be a portion of the territory of the parish of Jefferson.
He has also appealed from the decree based on the last verdict, ■and — to obtain its reversal — relies on many grounds, some of which are discussed at length and others submitted without discussion. The first in order is : that — on the trial of the prisoner’s application for a change of venue — the Judge refused to have the witnesses’ testimony taken down in writing. As to this refusal, the bill of exception merely recites that “ defendant introduced nine witnesses to prove the allegations contained in his application* that they were received, sworn and did testify.” Not even the substance of what they testified to is given or alluded to in the bill, at the foot of which the judge has appended the statement •that “ on the motion to change the venue, there was no exception to his ruling.”
It is manifest that such a motion is addressed to exclusively the Judge, and that he alone can and must pass on the sufficiency or insuf *93 ficiency of the facts alleged and testified to: but, in criminal cases, to-convey any proper and legal evidence from the lower to the higher jurisdiction, there is one, only one vehicle, and that is the bill of exception. If that taken by the prisoner’s counsel, had reached us with a statement certified to by the judge, that — on the hearing of the application for a change of venue — nine credible and uncontradicted witnesses had been examined, and that every one of the nine had sworn that, by reason of prejudice existing in the public mind, the accused could not obtain an impartial trial in the parish of Jefferson, he would have presented a question of law resting on admitted facts, and that, question we would have been bound to consider and decide.
We believe — as urged by defendant’s counsel — that, in regard to. such an application, the discretion of the judge is not unlimited; that, when the prejudice does .exist, when its existence is proven, the accused has an absolute right to a change of venue, and that — from an improper-denial of that right — he may appeal to this Court: but — to obtain it. here — the bill of exception must show, by the recital of undisputed facts — that the judge has undoubtedly misapplied, or arbitrarily violated the law. Otherwise, our jurisdiction does not attach to the matter* nor to any of its branches.
Constitution of 1868, art. 74 — 20 A. 369 — 21 A. 290,473 — 22 A. 38,468 — 23 A. 148, 525 — 26 A. 543.
Driven from that well defended, but untenable position, defendant’s, counsel renews his attacks against, and assails the decree from nine-other, and as untenable positions.
I.
On the 9th of March, 1876, this case was called for trial: the accused answered that no correct copy of the indictment had been served on him, and — for that reason — moved for a continuance. In support of his motion, he presented to the court the copy which he had received from the sheriff: instead of the word Jefferson, the word parish is therein written and repeated; it reads: “ the grand jurors of the State of Louisiana, duly empanelled and sworn for the parish of “parish.”' This objection was properly overruled: in the margin of the copy of indictment served on and introduced by defendant, the caption is as follows: “Second district court, parish of Jefferson, State of Louisana.”' The clerical error alluded to could — in no way — prejudice the defence, and — were it otherwise — the law now expressly provides “ that it shall not be necessary to state any venue in the body of the indictment, but the State, parish, or other jurisdiction named in the margin thereof, shall be taken to be the venue for all the facts stated in the body of such indictment, etc.” Besides, the record shows that — on account of the absence of the prisoner’s witnesses — the trial was postponed until *94 the 8th of April, 1876, and that — in the mean time — another and correct •■copy was ordered to be, and was served upon him. In fact as in law, -this first exception has no foundation.
Rev. Statutes, sect. 1062 — 8 R. R. 591 — 15 A. 495.
II.
The objection that the honorable Don A. Pardee — the presiding .judge — was a resident of the Seventh District of the city of New Orleans, and not — as prescribed by the constitution — a resident of the ■ district in which he exercised his functions, is not supported by the evidence. We have ourselves decided that the Seventh District of the •city is embraced within the territorial limits of the Second Judicial District. State vs. Williams, 29 A. 779.
III.
On the 12th of April, 1876, the prisoner was brought to the bar of the court to stand his trial, and — for two reasons — protested against the declared intention to try him:
1. Because Act No. 45 of the Legislature, under and by virtue of •which the court-was then being held, was unconstitutional and void.
2. Because, in drawing the jury for that term, none of the formalities prescribed by Act No. 94 of 1873, had been complied with.
The title of the statute of 1876, is partly in these words; “ An act •to define and extend the limits of the Second Judicial District; to fix the terms of the court therein,” and — by the first section of said act— the last-mentioned object of its passage was carried out and those terms fixed. Whatever may be the constitutional value of the other -sections, the first one is certainly constitutional.
As to the pretended irregularity in the drawing of the jury, the fudge’s statement is that no evidence was offered by defendant to support that branch of his exception. It does not appear that he did, but he now refers to the list of jurors served upon him, and that list shows •that said jurors were drawn on the third of April for the term which commenced on that day, but that they were to be called only from the tenth of said month. The jury should have been drawn not less than ■thirty, nor more than sixty days, before the commencement of the term; 'but the very law relied upon by defendant expressly declares “ that all objections to the manner of drawing juries, or to any other defect or ■irregularity that can be pleaded against any array or venire, must be urged on the first day of the term, or all such objections shall be con•sidered as waived, and cannot afterward be urged.” In this case, there is no charge that any fraud was practiced or great wrong committed, •and the objection was raised nine days after the commencement of the term, two days after that on which the jurors had been summoned to .appear and to serve as .such. It was then too late.
Act of 1873, p. 169, sect. 12.
*95 IY.
John Pierce, summoned as a talesman, claimed that — as a member of the police jury of the parish of Jefferson, he was exempt from jury ■duty. The court decided that he was not, and to its ruling on this point the accused excepted. We are referred by his counsel to section 2126 ■of the Revised Statutes, under which the exemption was claimed. That .section, in this respect, was in conflict with, and was repealed by the act of 1873. The judge correctly held that — at the date of the trial — that privilege no longer existed. Act of 1873, p. 166, sect. 2 and 15.
Y.
To the admission of the declaration made by the deceased, after he ihad been mortally wounded, the accused excepted on the grounds :
1. That it was not made to a sworn officer, and not reduced to writing.
2. That, as the deceased lived live days thereafter, his statement ■can not be considered as a dying declaration.
Whether made to a private individual or to a sworn officer, whether reduced to writing or not, such a declaration is admissible, and should ever be received to assist judges and juries in discovering how, where, when, why and by whom the deceased was killed. It was eminently right to attach an important value to the declaration of one who feels that he is near to his grave, almost in presence of his God.
It matters little that, after making his declaration, the wounded party survived several days. Howsoever long he may have survived, was the reported declaration made under the belief of approaching dissolution, under a sense of impending death, when the heart is justly presumed to be free from anger, hatred and falsehood? That is the ■only test, one which involves a question of fact.
5th Allen 495 — 11 Fred. 513 — 26 Gratt. 963 — 8 Smed. & Marsh 401— Archibold (8th ed.) p. 431, No. 1 — Green’s Com. Reps. 490 — 11 Ohio 424— 35 Cal. 49 — 20 Ark. 36 — 26 Mich. 112 — 45 Vt. 308 — 32 Miss. 433 — 8 Blackf. 101 — 6 Parker 11 — Wharton Am. Cr. Law 669, 670, 673 — 8 A. 514 — 10 A. 131 — 12 A. 274 — 13 A. 45 — 23 A. 558 — 8 How. 665.
The deceased’s declaration is embodied in the bill of exception, and ■ defendant’s counsel insists that it proves absolutely nothing, or — at most — that defendant was absolutely crazy. What is it ? Shortly after 'he had been wounded, the deceased said : “I am dying.” Be quiet, he was told, and you will get well. He repeated: “ I am dying, I will not get well.” He was asked: what brought on the trouble, and did not answer. The witness then remarked: Daniel would not have done this without cause ; the deceased replied : Daniel got mad because I would not go with him to see about the wood, took his knife and stabbed me, that is all.”
This proves that there are monsters in this world, and that, against their imagined insanity, society should be protected.
*96 VI.
On the part of defendant, no evidence was offered, and — on that account — his counsel claimed the right to close the argument to the j ury. The right thus claimed has invariably been denied since the decision of this court in “ State against Millican,” reported in the 15th A. p. 557— Archibold, vol 1, (8th ed.) p. 551 — 1 Gratt. 557 — 10 Ohio, N. S. 598 — 48-Mo. 55.
These are the only points noticed and discussed in the brief submitted by defendant’s counsel. Those unnoticed in the brief and urged in. the motion to quash the indictment, are : ' .
VII.
That the jury should have been drawn from the parish of Jefferson, as it was prior to the passage of acts 71 of 1874 and 45 of 1876, and when it embraced what is now known as the Seventh District of the city of New Orleans. On his first trial, the accused excepted to the venire, because the jurors had been partly drawn from said district, and our-predecessors considering this as an error prejudicial to him, did, on that very account and at his own request, grant him anew trial. Though he might not have been concluded by the course which he then pursued, and as to this we express no opinion, he waived the presumed privilege by not asserting it on the first day of the term.
28 A. 38.
VIII.
That he should have been tried on the first indictment found against him, and could not have been — as he was — re-indicted for the same offence. The first indictment was — at least inferentially — declared by this court irregular and invalid, and the accused was properly re-indicted.
IX.
In the motion for a new trial, two of the grounds relied upon are : that no foreman was appointed to the jury by whom the prisoner was-tried — that their verdict was orally rendered, and ascertained by asking them what their verdict was. In criminal cases the law does not require the appointment of a foreman, and it is sufficient that the verdict be delivered orally and in open court. This was done.
8 R. R. 513 and 518.
"We have examined — with the care and attention due to this important cause — the several and exhaustive defences suggested by the remarkable zeal of the prisoner’s counsel. Those defences, though as full and as subtile as they could have been made, can not prevail against the law.
There is no error in the judgment appealed from, and that judgment is affirmed.